**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| DOMINIQUE JEFFERSON, | : | | |
| | : | | |
| *Plaintiff,* | : | | |
| | : | | |
| v. | : | Civil Action No.: | 22-1436 (RC) |
| | : | | |
| DISTRICT OF COLUMBIA, *et al,* | : | Re Document No.: | 12 |
| | : | | |
| *Defendants.* | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DISTRICT OF COLUMBIA'S PARTIAL MOTION TO
DISMISS**

## I.  INTRODUCTION

Plaintiff Dominique Jefferson brings claims against the District of Columbia and

Jeannette Myrick based on his time spent in D.C. Jail, including a total of five counts, and

requests money damages, declaratory relief, and injunctive relief.  The District moves under Rule

(12)(b)(1) to dismiss Mr. Jefferson's requests for declaratory and injunctive relief.  The District

also moves under Rule 12(b)(6) to dismiss one count in its entirety and one theory of liability

under another count.  For the reasons set forth below, the Court GRANTS in part and DENIES in

part the District's motion to dismiss.

## II.  FACTUAL BACKGROUND

The Reentry and Sanctions Center ("RSC") is a short-term residential patient facility

operated by the Court Services and Offender Supervision Agency ("CSOSA") that houses

"defendants with mental health and substance abuse disorders" and has capacity for 102

individuals at a time.  Compl. ¶¶ 8, 10, ECF No. 1.  Criminal defendants held in custody may be

directly released into the custody of CSOSA for a "bed-to-bed" transfer from D.C. Jail to the RSC.[1]  Compl. ¶ 17.  Mr. Jefferson alleges that judges "routinely and frequently" include inpatient treatment at the RSC as a condition of probation or pre-trial release.  *See* Compl. ¶¶ 14–16.  But capacity constraints at the RSC mean that defendants ordered to be released from jail into RSC placement nonetheless end up spending excess time in D.C. Jail waiting for RSC space to open.  *See id.* ¶ 18.

On August 16, 2021, Mr. Jefferson was sentenced to serve "180 days all jail time suspended."[2]  Compl. ¶¶ 14, 20–21.  He was also sentenced to a term of probation, which included a condition that he undergo "[i]npatient [substance abuse] treatment through a residential treatment facility."  *Id.* ¶¶ 14, 23–24.  The sentencing court ordered that Mr. Jefferson was to be immediately released from the custody of the District of Columbia Department of Corrections ("DOC"), *id.* ¶¶ 21–22, 25–26, "and into the custody of Representatives of CSOSA for a bed to bed treatment program." *Id.* ¶ 25.  That did not happen; the DOC instead continued to hold Mr. Jefferson.  *Id.* ¶ 29.  The DOC did not provide any notice "to the committing judge, to Mr. Jefferson, and to his attorney" when they decided to hold Mr. Jefferson past his release date instead of immediately transferring him into CSOSA custody.  *Id.* ¶ 28.  Mr. Jefferson was finally released to CSOSA "approximately 30 days" after his sentencing date.  *Id.* ¶ 29.

Mr. Jefferson alleges two other recent examples of defendants who were held in DOC custody beyond the date when they should have been released to CSOSA, and asserts that DOC has a policy or custom "of holding persons ordered released to a third party until the third party

---

[1] The complaint uses "D.C. Jail" to refer to the District of Columbia's Central Detention Facility and the Correctional Treatment Facility.

[2] As required at the motion to dismiss stage, the Court recounts the allegations in the Complaint as if true.  *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

comes to fetch them." *Id.* ¶¶ 33, 54.  He adds that DOC knows that CSOSA has a "longstanding practice" of not picking up inmates from DOC until "two or more weeks" have elapsed after the conclusion of their sentences.  *Id.* ¶ 64.  Mr. Jefferson asserts that the DOC decides to "shift[] blame" to CSOSA and other parties rather than taking active measures to avoid detaining defendants beyond their release date.  *Id.* ¶¶ 84, 89.

Finally, Mr. Jefferson argues that Ms. Jeannette Myrick, who serves as "Lead Supervisory Legal Instruments Examiner" at DOC's Records Office, is individually at fault for his overdetention.  *Id.* ¶¶ 99–101.  He alleges that Ms. Myrick was responsible for ensuring DOC had authority to detain inmates, and that she failed to guarantee his release on his release date. *Id.* ¶¶ 108–09.  Ms. Myrick was allegedly acting within the scope of her employment with the District during these wrongful acts.  *Id.* ¶ 6.

Mr. Jefferson now brings suit based on his alleged wrongful overdetention.  The District seeks partial dismissal of the Complaint under Rule 12(b)(1) and 12(b)(6), focusing on (1) Mr. Jefferson's request for declaratory and injunctive relief; (2) Mr. Jefferson's respondeat superior liability claim against the District; and (3) Mr. Jefferson's theory of liability that the DOC has an explicit policy of overdetention.

### III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012).  When reviewing a motion to dismiss, a court should presume that the complaint's factual allegations are true and construe them liberally in the plaintiff's favor.  *United States v. Philip Morris, Inc.*,

116 F. Supp. 2d 131, 135 (D.D.C. 2000).  The complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Id.* at 678.  A court need not accept a plaintiff's legal conclusions as true, *id.,* nor must a court presume the veracity of legal conclusions that are couched as factual allegations.  *Twombly*, 550 U.S. at 555.

For a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden of proving that the Court has subject-matter jurisdiction to hear his claims.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C. 2001).  For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (quotation omitted). Additionally, under Rule 12(b)(1), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## IV.  ANALYSIS

### A.  Request for Declaratory and Injunctive Relief

In addition to money damages, Mr. Jefferson's requested relief includes "declaratory judgment and injunctive relief under 42 U.S.C. § 1983 law against the Government of the

District of Columbia[.]"  Compl. ¶ 1.[3]  The District contends that the Court does not have

standing to hear this claim for relief and that the Court should dismiss under Rule 12(b)(1).  *See*

Def. Mem. Supp. Mot. to Dismiss ("Def. Mem.") at 5, ECF No. 12.

A plaintiff must show that he has standing to sue, which is "an 'essential and unchanging'

predicate to any exercise of [the Court's] jurisdiction."  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d

658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560).  To establish "[t]he 'irreducible

constitutional minimum'" of standing, "(i) the party must have suffered a concrete and

particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the

defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision."

*Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61).

Further, a "plaintiff must demonstrate standing separately for each form of relief sought[.]"

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000).

Relief that "aims to prevent future illegal acts often will implicate standing concerns."

*Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 59 (D.D.C. 2021) (quoting *City of Houston

v. HUD*, 24 F.3d 1421, 1429 n.6 (D.C. Cir. 1994).  If the asserted injury has not occurred, "that

threatened injury must be certainly impending" in order to satisfy the injury-in-fact requirement.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (quotations omitted); *see also Swanson

Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (to obtain injunctive relief, a

plaintiff "must show an imminent future injury").  A "highly attenuated chain of possibilities"

---

[3] Mr. Jefferson brings his claim on behalf of himself and as a prospective class action.
*See* Compl. ¶ 2.  The parties have agreed to stay class certification until after the motion to
dismiss.  This delay does not affect the analysis here. "That a suit may be a class action . . . adds
nothing to the question of standing, for even named plaintiffs who represent a class 'must allege
and show that they personally have been injured, not that injury has been suffered by other,
unidentified members of the class[.]'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016)
(quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

that might lead to injury is not sufficient to satisfy Article III standing.  *Clapper,* 568 U.S. at 410.
Even after past injuries, "[u]nless a plaintiff can show he is 'realistically threatened by a
repetition of his experience [giving rise to the injury] . . . he has not met the requirements for
seeking an injunction in federal court[.]'"  *Chang v. United States*, 738 F. Supp. 2d 83, 88
(D.D.C. 2010) (alterations in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109
(1983)); *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) ("past injuries alone are
insufficient to establish standing.").  The same requirement applies to declaratory judgments.
*See, e.g.*, *Johnson v. Williams*, No. 6-cv-1453, 2009 WL 6810187, at *1 (D.D.C. Aug. 25, 2009)
(holding that *Lyons* applies to both injunctive and declaratory relief); *see also Haase v. Sessions*,
835 F.2d 902, 911 (D.C. Cir. 1987) ("Although *Lyons* and its predecessors involved injunctive
relief, whereas [Plaintiff] seeks declaratory relief, we do not distinguish *Lyons* on this basis.").

　　Here, the District argues that Mr. Jefferson has no standing to seek declaratory and
injunctive relief because he has not shown any certainly impending future injury.  *See* Def. Mem.
at 5.  Despite his burden to demonstrate standing, Mr. Jefferson does not respond at all to this
argument and therefore concedes a lack of standing.  *Uranga v. U.S. Citizenship & Immigr. Servs.*,
490 F. Supp. 3d 86, 109 (D.D.C. 2020) ("[I]t is well understood in this Circuit that when a plaintiff
files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant,
a court may treat those arguments that the plaintiff failed to address as conceded.") (internal
quotations and citations omitted).

　　On top of Mr. Jefferson's concession, the Court agrees with the District's argument that Mr.
Jefferson lacks standing for declaratory and injunctive relief.  As the District says, for Mr. Jefferson
to once again be injured by the practices he identifies here, he would need to "engage in criminal
conduct, then be arrested, then be convicted, then be sentenced to release from DOC into the
custody of CSOSA for inpatient substance abuse treatment, and then CSOSA would need to fail

to make arrangements to timely transport him by or before his expected release date."  Def.

Mem. at 5–6.  Such a speculative series of events is insufficient to confer standing.  *Black Lives*

*Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 35–36 (D.D.C. 2021) (finding plaintiffs'

"hypothetical chain of events . . . too speculative to confer standing for injunctive relief" when

injury depended on four different uncertain things happening in succession).  Although Mr.

Jefferson's complaint has allegations suggesting that future overdetentions will happen for other

people, there is nothing to indicate "[he] himself will again be involved in one of those

unfortunate instances."  *Lyons*, 461 U.S. at 108.  Thus, Mr. Jefferson has not satisfied the

constitutional injury-in-fact requirement necessary for standing, and the Court will grant the

motion to dismiss Mr. Jefferson's requests for declaratory and injunctive relief.  *See Rowe v.*

*PChange Protective Servs., LLC*, No. 22-cv-3098, 2023 WL 2598683, at *4 (D.D.C. Mar. 22,

2023) ("The future harm [Plaintiff] alleges as the basis for injunctive relief, however, is too

speculative to support standing. The Court will thus excise that element of his sought relief and

allow his suit to otherwise proceed.").

### B.  Claim 3 – Respondeat Superior Liability

Respondeat superior "is not an independent tort claim, but rather a legal theory of

vicarious liability that transfers liability from an agent to its principals."  *Simmons v. Skelonc*,

No. 20-cv-2845, 2021 WL 3207042, at *7 (D.D.C. July 29, 2021) (quoting *Convit v. Wilson*, 980

A.2d 1104, 1114 (D.C. 2009)).  It is firmly established that "a municipality cannot be held liable

under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of New*

*York*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Singletary v. District of*

*Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014).  That includes the District of Columbia.  *See Act*

*Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. District of*

*Columbia*, 846 F.3d 391, 413 (D.C. Cir. 2017) (treating D.C. as a municipality for the purposes of § 1983).  However, the District may still be vicariously liable under the respondeat superior doctrine when a plaintiff brings common law tort claims against a District employee acting in the scope of employment.  *See Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997); s*ee also Dingle v. District of Columbia,* 571 F. Supp. 2d 87, 99 (D.D.C. 2008) ("The Court agrees that the District cannot be held liable for constitutional torts committed by employees, but it finds liability for common-law torts may be imposed on the District under the theory of respondeat superior.").

Claim 3 asserts a respondeat liability theory, but the challenge is determining whether it does so under § 1983 or as part of Mr. Jefferson's common law claims.  The District makes a compelling argument that Claim 3 should be dismissed under Rule 12(b)(6) as a forbidden § 1983 respondeat superior claim.  Def. Mem. at 7; Reply Sup. Def. Mot. Dismiss ("Reply") at 2–3, ECF No. 14.  Indeed, Claim 3 is titled as "§ 1983 Liability of District of Columbia for Overdetentions – respondeat superior."  Compl. at 20.  And earlier in the complaint, Mr. Jefferson asserts that he has claims for "relief under 42 U.S.C. § 1983 law against the Government of the District of Columbia . . . and for money damages under the common law against Jeanette Myrick" with no mention of a common law claim against the District.  *Id*. ¶ 1.

Mr. Jefferson responds that "[t]he heading contains an extraneous term '§ 1983' but it also contains the legal term 'respondeat superior.'"  Pl. Opp'n Mot. Dismiss ("Pl. Opp'n") at 3, ECF No. 13.  Looking beyond the heading of Claim 3, the following Paragraph 118 alleges that "Defendant District of Columbia is liable in respondeat superior for the torts of Ms. Myrick and the other agents of the District."  Compl. ¶ 118.  Elsewhere in the complaint, Mr. Jefferson only pleads common law torts—false imprisonment and negligence—against Ms. Myrick*. See id*.

¶¶ 94–103, 104–116. He does not assert any § 1983 claim against Ms. Myrick, or any other agent of the District, meaning that his common law claims are the only logical underlying tort for respondeat superior liability.[4] *See Simmons*, 2021 WL 3207042, at *7 ("Respondeat superior is not a stand-alone tort claim, and there are no remaining claims to which the theory of respondeat superior could be applied to create liability for the District."); *Black v. District of Columbia*, 480 F. Supp. 2d 136, 141 (D.D.C. 2007) (finding no basis for respondeat superior vicarious liability where predicate claims against employees were dismissed).

The unfortunate takeaway from this back-and-forth is that the complaint is at odds with itself. Still, with that contradiction in mind, the Court construes Claim 3 as advancing under the common law and declines to dismiss "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (allowing § 1983 claim to go forward when plaintiff did not explicitly invoke statute); *see also Bean v. Perdue*, No. 17-cv-0140, 2017 WL 4005603, at *4 (D.D.C. Sept. 11, 2017) (citing *Johnson,* 574 U.S at 11). While this situation is the reverse of *Johnson*—instead of omitting § 1983, the complaint includes an inapposite reference to the statute—the logic of looking past a poorly stated legal theory also applies here. Despite the reference to § 1983, Mr. Jefferson has pleaded an array of underlying common law misconduct by Ms. Myrick, alleged that she was acting in the scope of her employment during that misconduct, and used Claim 3 to explicitly invoke the doctrine of respondeat superior with regard to Ms. Myrick's misconduct. Compl. ¶¶ 6, 94–103, 104–116. That is enough to fairly put the District on notice of the claim. *See Brown v. Sessoms*, 774 F.3d

---

[4] Certainly, plaintiffs do sometimes plead claims that are plainly foreclosed by the law. While the Court would have no qualms about dismissing a § 1983 respondeat superior claim, it is questionable that Mr. Jefferson intended to invoke the statute.

1016, 1022 (D.C. Cir. 2014) (citing *Johnson,* 574 U.S at 11) (using fair notice as the touchstone for sustaining a claim pleaded under an unclear legal theory); Fed. R. Civ. P. 8(a)(2).

The District also argues in Reply that if the Court does not dismiss Claim 3 entirely, it should alternatively dismiss Claim 3 as to "the other agents of the District" because the identity of these agents and the nature of their conduct are unspecified and because the "*only* common law causes of action expressly pled in the Complaint are brought against Myrick."  Reply at 3 (emphasis in original) (citing Compl. ¶ 118).  The District has waived this argument by failing to raise it until the reply brief.  *Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95–96 (D.D.C. 2012) (holding that "because the District raised [an] argument for the first time in its reply brief, it is waived" (citations omitted)); *accord Latson v. Holder,* 82 F. Supp. 3d 377, 388 n.4 (D.D.C. 2015).  Accordingly, at this stage, the Court will not dismiss this part of Claim 3.[5]  Of course, because any respondeat superior claim against the District must be based on an underlying common law cause of action, it follows that Mr. Jefferson can only invoke respondeat superior liability with regards to Ms. Myrick's alleged tortious conduct.  *See Simmons*, 2021 WL 3207042, at *7.

### C.  Claim 4 – Explicit Policy Theory of Liability

To hold a municipality liable under ¶ 1983, a plaintiff must plead a constitutional violation that is "affirmative[ly] link[ed]" to a municipal policy.  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).  A plaintiff has four ways to demonstrate the existence of a municipal policy: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action

---

[5] Additionally, as discussed below, there is unsettled law regarding piecemeal dismissals of parts of claims under Rule 12(b)(6).

of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.* (quotations omitted).

Mr. Jefferson attempts three of those ways, alleging that his overdetention was caused by either an explicit policy, a custom, or deliberate indifference. Compl. ¶¶ 123, 130–31. The District notes that Mr. Jefferson's "allegations concerning the existence of an explicit District policy are materially identical to those presented in a related case before this Court." Reply at 4. In fact, these allegations are for the most part directly copied from that prior case. *See Tyson v. District of Columbia*, No. 20-cv-1450, 2021 WL 4860685, at \*9 (D.D.C. Oct. 19, 2021); *compare Tyson*, Sec. Am. Compl. ¶¶ 103–09, ECF No. 29, *with* Compl. ¶¶ 123–29. The Court found that this previous complaint did not sufficiently allege the existence of an explicit policy. *Tyson*, 2021 WL 4860685, at \*9 ("Tyson has therefore failed to allege the existence of an explicit policy under the first *Baker* method."). And so the District asks the Court to dismiss the explicit policy theory of liability in this case for failure to state a claim.[6]

Mr. Jefferson's response is sparse, citing the District of Columbia's Rules of Professional Conduct to say that his counsel believes there is a "good-faith argument for extension, modification, or reversal of existing law at the motion to dismiss stage and to preserve the claim." Pl. Opp'n at 4. If such an argument exists, Mr. Jefferson's counsel has not made it.

---

[6] The plaintiff in *Tyson* also made allegations nearly identical to those in the present case that the overdetention was alternatively caused by either custom or deliberate indifference. *Compare Tyson*, Sec. Am. Compl. ¶¶ 110–13, *with* Compl. ¶¶ 130–33. *Tyson* found those theories were sufficiently alleged, and the District is not seeking to dismiss Mr. Jefferson's custom or deliberate indifference theories of liability. *Id*. at 10–14.

Instead, the opposition offers nothing at all to support "modification" or "reversal" of the conclusions in *Tyson*. *Id.;* Reply at 4.

However, the Court does not stop there. While Mr. Jefferson did not raise this argument in opposing the motion to partially dismiss Claim 4, "[t]here appears to be some disagreement among the federal courts as to whether Federal Rule of Civil Procedure 12[(b)(6)] permits a district court to dismiss a portion of a claim (i.e., a theory of liability) or rather whether Rule 12 permits only dismissal of a claim *in toto*."[7] *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, 605 F. Supp. 3d 157, 160 n.1 (D.D.C. 2022). The D.C. Circuit has not addressed this question directly, although it has previously implied that a court *may* partially dismiss a claim. *See generally Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666 (D.C. Cir. 2005) (concluding that certain theories of liability should be dismissed for failure to state a claim). More recently, one judge in this district tackled this issue and found that "at the motion-to-dismiss stage, once a court determines that a claim states a viable basis for relief, it cannot further parse out whether other portions of the claim would suffice on their own." *Fed. Trade Comm'n v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022) (declining to dismiss a Count when only some of the allegations therein stated a plausible claim for relief). After that decision, another judge in this district recounted the unsettled legal landscape and declined to order a partial dismissal "[i]n an abundance of caution." *S. Poverty L. Ctr.,* 605 F. Supp. 3d at 160 n.1.

The Court follows that cautious approach here. That approach is also consistent with *Tyson*. *See Tyson,* 2021 WL 4860685. Contrary to the District's assertion that the Court "has

---

[7] A motion to dismiss under Rule 12(b)(6) for failure to state a claim is different than a motion to dismiss Rule 12(b)(1) for lack of standing; as explained above, the Court not only can but *must* dismiss a portion of requested relief for which it does not have subject matter jurisdiction. *See Rowe*, 2023 WL 2598683, at *4.

already dismissed materially identical allegations," Def. Mem. at 2, *Tyson* found the explicit policy allegations insufficient but nevertheless did not take the step of dismissing that theory of liability.  *See Tyson,* 2021 WL 4860685, at *14 (denying motion to dismiss in total).  The Court therefore declines to partially dismiss Claim 4.

This decision does not mean the Court ignores the similarity of the current allegations to those in *Tyson*.  Notwithstanding the current ruling, "summary judgment is different" than a motion to dismiss, and the District could challenge Mr. Jefferson's explicit policy theory at the summary judgment stage.  *Fed. Trade Comm'n*, 581 F. Supp. 3d at 60 ("In stark contrast to Rule 12(b)(6), Rule 56 'explicitly allows for partial summary judgment and requires parties to identify each claim or defense—or the part of each claim or defense—on which summary judgment is sought.'") (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (cleaned up)).  Plus, even when declining to partially dismiss a claim, "[a] trial court enjoys considerable discretion over discovery matters."  *Id.* at 61 (quoting *TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 718 F. Supp. 2d 90, 95 (D.D.C. 2010)).  During discovery, the Court will be mindful of *Tyson*, and will take its holding into consideration when resolving any discovery disputes resulting from the explicit policy theory of liability included within Claim 4.  *See Fed. Trade Comm'n*, 581 F. Supp. 3d at 61.

## V.  CONCLUSION

For the foregoing reasons, the District of Columbia's Partial Motion to Dismiss, ECF No. 12, is **GRANTED in part** and **DENIED in Part**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 29, 2023                                                    RUDOLPH CONTRERAS
                                                                                      United States District Judge